CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 0 8 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>　　　Plaintiff,<br>v.<br><br>ROBERT KEITH ADAMS,<br>　　　Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Criminal Action No. 7:06-cr-00112<br><br>**MEMORANDUM OPINION AND ORDER**<br><br><br>By: Hon. James C. Turk<br>Senior United States District Court Judge |

　　　The Defendant, Robert Keith Adams, was originally charged in a forty-eight count indictment along with twenty others associated with the Sheriff's Office of Henry County, Virginia ("HCSO"). The single count that charged the Defendant was dismissed, and the grand jury returned another indictment charging the Defendant alone with six counts. The Defendant claims that each count of this indictment is defective and should be dismissed.

　　　Having considered the Defendant's motion together with the briefs and arguments of both parties, the court concludes that the Defendant's motion must be denied.

## I.

　　　A Grand Jury sitting in Abingdon, Virginia returned a six-count indictment on December 19, 2006 charging the Defendant with being an accessory after the fact, 18 U.S.C. § 3; misprision of felony, 18 U.S.C. § 4; obstruction of an official proceeding, 18 U.S.C. § 1512(c)(2);[1]

---

[1] The United States has indicated that it will not proceed on the count charging the Defendant with criminal activity under 18 U.S.C. § 1512(c)(2). (Gov't's Resp. Mot. Dismiss 4.) The court will enter a separate order dismissing count three of the indictment and does not

1

obstruction of a pending proceeding, 18 U.S.C. § 1505; and making a false statement in a matter within the jurisdiction of the United States government, 18 U.S.C. 1001(a)(2). Each of the crimes with which the Defendant is charged is alleged to have occurred during the Defendant's tenure as a Deputy Sheriff in the HCSO, or during federal investigations of wrongdoing at the HCSO.

## II.

The Defendant alleges a variety of defects in the indictment. The court will consider each of these in turn.

### *a) Specificity*

The Defendant claims that none of the counts in the indictment are sufficiently specific. The Court of Appeals for the Fourth Circuit has explained that "[t]o pass constitutional muster, an indictment must (1) indicate the elements of the offense and fairly inform the defendant of the exact charges and (2) enable the defendant to plead double jeopardy in subsequent prosecutions for the same offense." United States v. Williams, 152 F.3d 294, 299 (4th Cir. 1998). "An indictment is sufficient if it states each of the essential elements of the offense." United States v. Lockhart, 382 F.3d 447, 449 (4th Cir. 2004); See also Hamling v. United States, 418 U.S. 87, 117 (1974) (It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished).

The Defendant has conceded that the indictment states the essential elements of each

---

consider the merits of the Defendant's challenges to this count.

offense charged, but argues that this is not enough. However, the indictment does more than track the language of the statute and state the elements of the offenses charged. Each count expressly incorporates the indictment's seven-paragraph introduction, which provides factual details about the crimes the Defendant is alleged to have committed. Although the indictment does not specify the exact dates and locations that each act is alleged to have occurred, each count, taken together with the introduction, provides enough information to fairly inform the defendant of the exact charges and enable the defendant to plead double jeopardy in the future.

### b) *Statute of limitations*

The Defendant also argues that the statute of limitations has run with respect to counts one, two, five and six. The offenses that these counts charge are subject to a five-year period of limitation. 18 U.S.C. § 3282. The limitations period generally begins to run when the criminal act charged is complete, United States v. Smith, 373 F.3d 561, 563 (4th Cir. 2004), and ends on the date the defendant is indicted. See § 3282. The defendant was indicted on December 19, 2006. Criminal acts completed after December 19, 2001, therefore, are not barred by § 3282.

Counts five and six each charge the Defendant with making false statements on March 24, 2006. The Defendant argues that because the indictment does not specify when the events about which the statements were made, the charges are time barred. The criminal conduct charged, however— the making of false statements—allegedly took place on March 24, 2006, a time well within the limitations period.

Counts one and two are based on conduct that occurred "from in or about 2001 until 2006 . . . ." (Indictment 3.) Although this language leaves open the possibility that the alleged criminal activity *began* at a time in 2001 prior to December 19, it does not allege that it was

3

completed "until 2006." These charges are thus within the limitations period.[2]

### c) *Specific act of concealment in misprision charge*

The Defendant claims that count two, charging the Defendant with misprision of a felony, is defective for failing to allege specific acts of concealment. He argues that mere silence is not enough to establish a violation of 18 U.S.C. § 4. Count two alleges

> [t]hat from in or about 2001 until in or about 2006, in the Western Judicial District of Virginia, ROBERT KEITH ADAMS, having knowledge of the actual commission of a felony cognizable by a Court of the United States, to wit Possession With Intent to Distribute and Distribution of Approximately Two Kilograms of Cocaine, *did conceal the same by performing acts* in violation and contravention of his sworn duties as a law enforcement officer, and did not as soon as possible make known the same to some judge or other person in civil or military authority under the United States.

(Indictment 4 ¶ 2 (emphasis added).) This language plainly alleges that the Defendant performed acts of concealment. Details of the alleged concealment are provided in the introduction to the indictment, which is incorporated by reference in first paragraph of the count. Whether the Defendant actively concealed a felony is a question of fact to be resolved by the jury at trial.

### d) *Materiality in false statements charge*

Counts five and six each charge the Defendant with making a "false material statement and representation" to a federal official. (Indictment 6.) The Defendant argues that the counts must be dismissed because the false statement that the Defendant is alleged to have made is not material. This is a question for a jury to resolve at trial, United States v. Gaudin, 515 U.S. 506,

---

[2] The United States has argued that the offenses charged in counts one and two, being an accessory after the fact and misprision of felony, respectively, are continuing offenses. The language of the indictment is such that the offenses are alleged to have been completed within the limitations period whether or not they are continuing offenses. The court, therefore, expresses no view about whether these counts charge continuing offenses.

4

522–23 (1995), rather than a question concerning the adequacy of the indictment.

*e) Outrageous government conduct*

The Defendant claims that all of the counts in the indictment should be dismissed, arguing that the government engaged in outrageous conduct that offends a universal sense of justice. "In order to constitute a due process violation, the government's conduct must be so outrageous as to shock the conscience of the court." United States v. Osborne, 935 F.2d 32, 35 (4th Cir. 1991). The Court of Appeals for the Fourth Circuit has explained that "courts have over time continued to demonstrate a high shock threshold in the presence of extremely unsavory government conduct." Id. (citing as an example United States v. Simpson, 813 F.2d 1462 (9th Cir. 1987) (rejecting a due process claim where the FBI manipulated a woman into providing sexual favors to a targeted person in order to lure him into selling heroin to undercover agents)).

The Defendant claims that when seeking information from the Defendant, agents of the United States promised the Defendant that "when you tell us something we're not sharing that with anybody. It's staying right here in this office." (Def's Mot. to Dismiss 12.) The United States apparently brought charges against the Defendant based upon allegedly false statements he made after hearing these words.

Assuming without deciding that the Defendant's characterization of the facts is correct, the government's conduct does not cross the very high threshold necessary to require dismissal of the indictment.[3]

---

[3] The court also assumes without deciding that the due process clause may, under certain circumstances, require the dismissal of an indictment where government conduct is shown to be outrageous. Cf. United States v. Tucker, 28 F.3d 1420, 1421 (6th Cir. 1994) (holding that the due process clause creates no defense based on outrageous government conduct).

5

*f) Definition of "pending proceeding" under 18 U.S.C. § 1505*

Count Four charges that the Defendant "did corruptly endeavor to influence, obstruct and impede the due and proper administration of the law involving a pending proceeding by an agency of the United States; that is, investigations by the Federal Bureau of Investigation and the Drug Enforcement Administration" in violation of 18 U.S.C. § 1505. (Indictment 5.) The defendant argues that "an FBI (or DEA) investigation is not a 'proceeding' within the meaning of 18 U.S.C. § 1505." (Def's Br. Supp. Mot. Dismiss 4, citing United States v. Higgins, 511 F. Supp. 453, 454 (W.D. Ky. 1981) (holding that an FBI investigation is not a "proceeding" under § 1505).)

"Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." Dolan v. U.S. Postal Serv., 126 S. Ct. 1252, 1256 (2006). The paragraph of § 1505 under which the Defendant is charged reads:

> Whoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, or the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress— [shall be punished.]

18 U.S.C.A. § 1505 (West 2000). This provision was enacted in its original form in 1940 as "An Act To provide for the protection of witnesses appearing before any department, independent establishment, or other agency of the United States, or the Congress of the United States." Pub. L. No. 76-401, 54 Stat. 13, 13 (1940) (codified as amended at 18 U.S.C. § 1505). The 1940 statute contained both a witness protection provision and a "catchall" provision concerning

6

obstruction. It punished

> who[m]ever corruptly . . . shall endeavor to influence, intimidate, or impede any witness in any proceeding pending before any department, independent establishment, board, commission, or other agency of the United States . . . or who corruptly . . . shall . . . endeavor to influence, obstruct, or impede the due and proper administration of the law under which such proceeding is being had before such department, independent establishment, board, commission, or other agency of the United States . . . .[4]

54 Stat. at 13. This statute borrowed much of its language from the statute that at the time appeared at 18 U.S.C. § 241 prohibiting witness tampering and obstruction with respect to proceedings in United States Courts.[5] The Supreme Court had construed this earlier statute—the predecessor of what today appears at 18 U.S.C. § 1503—as requiring knowledge of a proceeding pending in a court of the United States. Pettibone v. United States, 148 U.S. 197, 206 (1893). The Court reasoned "that a person lacking knowledge of a pending proceeding necessarily lacked

---

[4] This provision underwent only minor revisions until Congress passed the Victim and Witness Protection Act of 1982, Pub. L. No. 97-291, 96 Stat. 1248 (codified as amended at scattered sections of 18 U.S.C.). Among other things, the 1982 act revised the witness tampering provisions of § 1505 and moved them to other sections of title 18. Id. This change, if made in isolation, would have left without an antecedent the demonstrative adjective "such," which appeared twice in the obstruction portion of the statute. The statute thus replaced the first "such" with "any pending," and the second with "any." Id. § 4(d)(2), (3).

[5] 18 U.S.C. § 241 in 1940 provided:
Whoever corruptly, or by threats or force, or by any threatening letter or communication, shall endeavor to influence, intimidate, or impede any witnesses in any court of the United States or before any United States Commissioner or officer acting as such Commissioner, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or officer acting as such commissioner, in the discharge of his duty, or who corruptly or by threats or force, or by any threatening letter or communication, shall influence, obstruct, or impede, or endeavor to influence, obstruct, or impede, the due administration of justice therein, shall be fined not more than $1,000 or imprisoned not more than 1 year, or both.
Act of Mar. 4, 1909, Pub. L. No. 60-350 § 135, 35 Stat. 1088, 1113 (codified as amended at 18 U.S.C. § 1503).

7

the evil intent to obstruct." United States v. Aguilar, 515 U.S. 593, 599 (1995) (citing Pettibone, 148 U.S. at 207).

The legislative history of the 1940 statute indicates that the new law was designed to "extend[] the protection [then] provided by law for witnesses in Court proceedings . . . to witnesses in proceedings before administrative agencies of the government."[6] Although the stated purpose of the statute was the protection of witnesses, the statute applied both the witness tampering provisions and the "catchall" provision of § 241 to the agency context.[7] Unlike the "catchall" provision of the original obstruction statute, which focused on the "justice [that] was being administered in [a] Court," Pettibone, 148 U.S. at 206 (1893), the "catchall" provision of the 1940 statute focused on the "law under which [any pending proceeding] is being had" before a department or agency of the United States. 53 Stat. at 13. The requirement of a pending proceeding remains a part of the "catchall" provisions of both statutes today. See 18 U.S.C. §§ 1503, 1505; Aguilar, 515 U.S. at 599.

The plain meaning of the term "proceeding" is broad. The dictionary defines "proceeding" as "a particular step or series of steps adopted for doing or accomplishing something." Webster's Third New International Dictionary 1807 (1986); See also Rice v. United States, 356 F.2d 709, 712 (8th Cir. 1966) ("'Proceeding' is a comprehensive term meaning the

---

[6] S. Rep. No. 76-1135, at 1 (1939); H.R. Rep. No. 76-1143, at 1 (1939); 84 Cong. Rec. 10910, 10910 (1939) (statement of Sen. O'Mahoney).

[7] The catchall provision of the new statute troubled at least one Senator, who expressed concern that the language would extend too much power to agencies. 84 Cong. Rec. 10910, 10911 (1939) (statement of Sen. Johnson) ("The language is so broad, and there is left much room for construction, that I should hate to pass a penal statute of this character. . . . I think that the language is so board that it would give to any board, any agency, or any department, the right to do things that ought not to be done.")

8

action of proceeding—a particular step or series of steps, adopted for accomplishing something"). This definition suggests that a judicial proceeding under § 1503 is different from a proceeding before department or agency of the United States under § 1505 because courts and agencies proceed differently, and work to accomplish different things. While the judicial power of the United States is limited to the cases and controversies enumerated in Article III of the Constitution, See Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803), the power of federal agencies is, in many respects, far broader. According to one treatise, "[f]ederal agencies adjudicate far more disputes involing individual rights than do the federal courts. They create more binding rules of conduct than Congress. Agencies also 'administer' in the broadest sense of that word. They investigate, enforce, cajole, publicize, spend, hire, fire, contract, collect information, and disseminate information." 1 Kenneth Culp Davis & Richard J. Pierce, Jr. Administrative Law Treatise § 1.1 (3d ed. 1994); see also Travis H. Mallen, Note, Rediscovering the Nondelegation Doctrine Through a Unified Separation of Powers Theory, 81 Notre Dame L. Rev. 419 (2005) (comparing constitutional limitations on congressional power to delegate authority to federal agencies with constitutional limitations on judicial power).

Consistent with the distinction between the respective functions of courts and agencies, courts have rejected the argument that the word "proceeding" as used in § 1505 refers only to those steps before a federal agency which are juridical or administrative in nature. See, e.g., United States v. Fruchtman, 421 F.2d 1019, 1021 (6th Cir. 1970). While the *judicial* proceedings that the Supreme Court has held to be within the scope of § 1503 may require a juridical component, it is not the requirement of a "proceeding" that so limits § 1503. In interpreting § 1503, the Supreme Court itself distinguished between action taken "with an intent to influence

9

judicial or grand jury proceedings" and action taken with an intent to influence "some ancillary proceeding, such as an investigation independent of the court's or grand jury's authority." Aguilar, 515 U.S. 593, 599 (1995). Both kinds of action require the intent to influence proceedings, even though only the former kind is within the scope of § 1503.

Section 1505 does not share the same scope. As the text of the statute makes clear, "proceedings" such as investigations are within the purview of § 1505 if they are dependent on a department or agency's authority. The court agrees with the Court of Appeals for the Eighth Circuit, which explained that "[p]roceedings before a governmental department or agency simply mean proceeding in the manner and form prescribed for conducting business before the department or agency, including all steps and stages in such an action from its inception to its conclusion." Rice v. United States, 356 F.2d 709, 712 (8th Cir. 1966). This definition is consistent with both the ordinary meaning of "proceeding" and the text of § 1505, which makes no distinction between agency proceedings that are juridical and those that are not.

The court holds that a DEA investigation[8] is a "proceeding" under § 1505.[9] Count Four

---

[8] Some courts, including one in the Fourth Circuit, have held that an investigation by the FBI independent of other agencies is not a "proceeding" under § 1505. See United States v. Wright, 704 F. Supp. 613, 615 (D. Md. 1989); United States v. Higgins, 511 F. Supp. 453, 454 (D. Ky. 1981); See also United States v. Kelley, 36 F.3d 1118, 1127 (D.C. Cir. 1994) (Explaining in dictum that "[f]or an investigation to be considered a proceeding . . . it must be more than a mere police investigation"). According to each of these cases, an agency must have rule-making or adjudicative authority for it to come within the scope of § 1505. Because the DEA has such authority, see 21 U.S.C. § 875; 28 C.F.R. § 0.100, and the indictment states that the relevant proceedings involved both the FBI and DEA, the court need not decide whether an FBI investigation alone would come within the scope of § 1505.

[9] Accord United States v. Senffer, 280 F.3d 755, 761 (7th Cir. 2002) (recognizing an SEC investigation as a "proceeding" under § 1505); United States v. Kelley, 36 F.3d 1118, 1127 (D.C. Cir. 1994) (recognizing an investigation by the Office of the Inspector General of AID as a "proceeding" under § 1505); United States v. Schwartz, 924 F.2d 410, 423 (2d Cir. 1991) (recognizing a customs investigation as a "proceeding" under § 1505); United States v.

10

need not be dismissed.

## III.

The court concludes that none of the claims advanced by the Defendant warrant dismissal of the indictment by which he is charged. The Defendant's motion to dismiss is hereby **DENIED**.

The Clerk is directed to send certified copies of this Memorandum Opinion and Order to all counsel of record.

ENTER: This \_\_8th\_\_ day of February, 2007.

*/s/ James C. Turk*
SENIOR UNITED STATES DISTRICT JUDGE

---

Browning, Inc., 572 F.2d 720, 724 (10th Cir. 1978) (same); United States v. Fruchtman, 421 F.2d 1019 (6th Cir. 1970) (same); Rice v. United States, 356 F.2d 709, 712 (8th Cir. 1966) (recognizing an investigation by the NLRB as a "proceeding" under § 1505).

11